Fuld, J.
While crossing the street underneath a recently constructed overpass of the Bronx River Parkway, Philip Morello was hit by an auto driven by defendant Mario Murzi and died of the injuries he sustained. Alleging that insufficient lighting and debris left on the sidewalk beneath the overpass had contributed to the accident, the plaintiff, as administratrix of the deceased’s estate, joined as defendants, in addition to Murzi, Brookfield Construction Co., Inc., W. E. Blume, Inc., and the City of New York. She sued Murzi in negligence and the other three in both negligence and nuisance, the nuisance count being dismissed by the trial court at the end of the case. The jury returned a verdict against defendant Murzi in the sum of $40,000, but found the other three defendants “ not negligent.” Upon appeal by the plaintiff from the judgment in favor of the latter — defendant Murzi took no appeal — the Appellate Division unanimously affirmed and this court granted leave.
The accident occurred at about 7 o’clock of a December evening in 1950 at a point where the Bronx River Parkway spans East Tremont Avenue between Morris Park Avenue on the west and Van Nest Avenue on the east in the Borough of The Bronx. The sole evidence as to how the accident happened is to be found in the examination before trial of defendant Murzi. He was driving east on Tremont Avenue, and his former mother-in-law, who “ didn’t see a thing ”, was with him. Murzi declared that, “ as soon as ” he “ got on into the middle ” of *88 the “ highway structure,” he “ saw a man directly in front of ” him; that he “ swung quickly toward the left trying to avoid hitting him ”, but was unable to do so.
The overpass in question was constructed by defendant Brook-field as the general contractor of the State of New York. Although the bridge deck had been completed in August of 1950 — the contract completion date was March, 1951 — some work, including installation of the lights under the structure, landscaping and other minor operations still remained to be done. The contract between Brookfield and the State called for the installation of two rows of three lights each in the ceiling of the overpass, and such work was in the hands of defendant Blume, the lighting subcontractor. There was neither provision nor requirement for a temporary lighting system, and no lights had been installed by December 18, 1950, the date on which the accident occurred. However, there were, on the northerly and southerly sides of East Tremont Avenue at both the easterly and westerly approaches to the overpass, large warning signs, illuminated at night by lights, reading
“ DANGER CONSTRUCTION AHEAD
Proceed With Catxtioh ”
It is plaintiff’s theory, and it is nothing more than theory based on conjecture and guesswork, that her husband was on his way home, that he left the subway at the northwest corner of East Tremont and Morris Park Avenues, that he walked east along the north sidewalk until he found his way blocked by masses of debris and rubble under the overpass, that he was then forced into the street and that he was struck by the car while attempting to cross to the south side. As already indicated, there was no evidence to support this elaborate and finespun theory. Indeed, the only basis for the claim that Morello was crossing from the north to the south sidewalk is contained in some inconclnsive testimony of defendant Murzi in a deposition taken on his examination before trial. And, in point of fact, such evidence, while usable against Blume, was not admis *89 sible against either Brookfield or the City, since neither had been given notice of the examination and neither was represented when it was conducted.
The only testimony bearing on the obstruction of the sidewalk and its impassability came from the police officer present when the accident occurred. He declared that the north side of the street in the area in question “wasn’t as passable ” as the south side; there were, however, no ‘ ‘ unusual obstructions, ’ ’ merely “ chunks of stone ” and, perhaps, a rock measuring “ a foot and a half by a foot by six inches.” The State’s engineer testified that both sidewalks under the overpass were completed by October of 1950 and were thereafter in “ very good condition ’ ’ and that earlier landslides from the slope next to the north abutment had ceased by the end of September, 1950. He later acknowledged that he had been mistaken when he declared that both sidewalks had been completed, but, he added, the portion not finished “had been graded with cinders and compacted so that pedestrians could pass over them without difficulty.” He did not, however, change his testimony with respect either to the absence of debris or to the cessation of landslides after September, 1950.
As to the adequacy of the lighting under the structure, all we need say is that the testimony was conflicting. Witnesses for Brookfield and the plaintiff — the State’s resident engineer on the Brookfield contract and Brookfield’s president — testified, in substance, that visibility beneath the overpass was almost as good as it was outside and that the intensity of the light within and without was about the same. On the other hand, defendant Murzi and his mother-in-law both stated that the underpass was “ dark.”
At the close of the trial, the court held that plaintiff’s theory “ that the proximate cause of the accident was the condition of the sidewalk ’ ’ was ‘1 decidedly farfetched ’ ’ and ruled it out of the case; in addition, it dismissed the nuisance cause of action as “ merged ” with the negligence count and as “ confusing to a jury. ’ ’ In affirming the judgment entered on the jury’s verdict in favor of the several defendants, the Appellate Division, while disapproving what it termed the Trial Justice’s “ excessive participation in the trial ”, concluded that the plaintiff suffered no *90 prejudice. It is to these three points that the plaintiff directs her arguments and upon which she bases her appeal.
As to the question of debris on the sidewalk, the trial court properly eliminated it from the case. It concerned only defendant Brookfield and the City in any event, for, as plaintiff’s counsel himself acknowledged, defendant Blume’s work had no connection with the construction and maintenance of the sidewalk. And, as already noted, since defendant Murzi’s deposition before trial was not admissible or usable against either Brookfield or the City, there is no evidence as to them of the direction from which Morello had come when struck by the car and no evidence of the direction he was facing. Indeed, apart from Murzi’e testimony, there is not the slightest intimation that Morello had left the subway at the place suggested by the plaintiff, that he had been walking east or, of prime significance, that he was even on the north sidewalk. All this being so, whether or not the dirt and stones, by no means an obstruction rendering the sidewalk impassable (cf. O’Neill v. City of Port Jervis, 253 N. Y. 423), forced Morello off the sidewalk and caused him to cross the street at that point, is a matter resting on the merest speculation. The trial court was unquestionably justified in ruling out of the case the theory that the condition of the north sidewalk was a proximate cause of the accident.
Equally warranted and proper was the court’s dismissal of the nuisance count. Where a nuisance arises solely from negligence, the nuisance and negligence elements may be so intertwined as to be “ practically inseparable ” (McNulty v. Ludwig & Co., 153 App. Div. 206, 213) and “ any attempt to separate them is a useless task.” (Khoury v. County of Saratoga, 267 N. Y. 384, 389.) In such a case, the single wrong done may be characterized as either negligence or nuisance (see, e.g., McFarlane v. City of Niagara Falls, 247 N. Y. 340, 345), and it does no harm if it is presented to the jury in only one aspect. The case is, of course, to be differentiated from one where the nuisance is an “ absolute ” nuisance, involving the creation of a noxious or hazardous condition irrespective of negligence. (See McFarlane v. City of Niagara Falls, supra, 247 N. Y. 340, 343.)
*91 In the present case, the issue of sidewalk obstruction having been removed from the case, we are left with but one wrong, that of failing to provide adequate lighting in the underpass. There being no question of an absolute nuisance, it was of no importance whether the plaintiff characterized the wrong of which she. complained as negligence or nuisance arising solely from negligence. When the jury failed to find the defendants negligent insofar as the lighting was concerned, it follows that the jury could not properly have found them guilty of maintaining the nuisance alleged. In short, if negligence is the gravamen of the wrong, if one negligently uses his property in such a way as to create a dangerous or noxious condition resulting in another’s injury, the offender may be guilty either of negligence or of maintaining a nuisance stemming from negligence. It matters not, as we have already indicated, which label the plaintiff employs, for quite obviously he may not have a double recovery. The trial court’s submission of the case to the jury upon the single count of negligence was, therefore, proper.
As to the other two contentions made by the plaintiff, we may be very brief. With respect to the court’s refusal to charge several requests, it is sufficient to note that, quite apart from the vagueness of some, a perusal of the instructions given indicates that the judge charged the substance of all of them. And, with respect to plaintiff’s final plaint, that the judge’s participation in the trial exceeded the bounds of fairness, we need but observe, as did the Appellate Division, that, while some of his questioning may have been “ excessive ”, it could not have occasioned any prejudice or harm. Examination of the record discloses that he merely sought to clarify facts left obscure and, indeed, demonstrates that his questioning as often pointed up matters favorable to the plaintiff as to the defendants.
The judgment of the Appellate Division should be affirmed, with costs.