HAROLD McKENNA et al., Respondents, *v.* ALLIED CHEMICAL & DYE CORPORATION, Appellant.*

Fourth Department, July 9, 1959.

---

*Hancock, Dorr, Ryan & Shove* (*Robert L. Duell* and *Charles W. Shorter* of counsel), for appellant.

*Driscoll, Mathews, Gingold & Cass* (*Daniel F. Mathews* of counsel), for respondents.

HALPERN, J.   The defendant has appealed to this court from an order of the County Court of Onondaga County, which reversed judgments for the defendant, and ordered new trials, in 17 actions for damages which were tried together in the Municipal Court of Syracuse.

The facts bearing upon liability are virtually undisputed; the principal facts were covered by a stipulation entered into by the parties in advance of the trial.

The defendant operates a chemical plant in the Village of Solvay. On January 9, 1956, the defendant's employees unloaded a railroad tank car containing liquid mixed ammonium hydroxide, commonly known as crude ammonia.  Some of the liquid had crystallized in the car because of the cold weather; in order to dissolve the crystals, water was pumped into the car and then steam was piped in to heat the water.  The car was left standing overnight with the steam in it.  A vapor containing ammonium sulphide escaped from the car and was dispersed throughout the neighborhood.  The night was a humid, foggy one; the air was saturated with moisture.  Also, there was a wind blowing from the northwest at from 3.8 to 13 miles per hour.  During the night, there was evident throughout the area, a strong odor of rotten eggs, which is the characteristic odor of ammonium sulphide.

The plaintiffs' homes were located within a radius of about one-half mile of the defendant's plant.  On the morning of January 10, the plaintiffs discovered that the paint on their homes had become discolored, having turned black or dark brown.  Later, the paint began to blister and in some instances it fell off.  Months later, the remaining paint gradually regained its color but, according to the plaintiffs, the color was " dead " and the " gloss " never returned.  It was explained by the experts that ammonium sulphide reacts with the moisture in the air to form hydrogen sulphide.  This in turn combines with

the lead oxide in paint to form lead sulphide, which is black. This accounted for the discoloration of the plaintiffs' houses.

It was stipulated by the defendant that "the ammonium sulphide was discharged into the atmosphere and carried by the said heavy northwest wind into and through the area in which the houses" of the plaintiffs were located.

The plaintiffs' complaints were based upon two theories: (1) that the defendant was guilty of negligence in that it failed "to handle said chemicals which were released, in a careful, prudent and safe manner"; (2) that "the actions of the defendant in releasing * * * [the] chemicals into the atmosphere * * * constituted a public nuisance".

Upon the trial, the plaintiffs called the superintendent of the soda ash department of defendant's plant as a witness on their behalf. He testified to the chemical reactions and, to a large extent, confirmed the testimony of the plaintiffs' expert as to the cause of the discoloration of the paint on the plaintiffs' homes. He testified that the same method of unloading and cleaning tank cars had been used for more than 40 years without mishap but he gave no explanation as to how or why the vapor happened to escape upon the occasion in question.

As part of its case, the defendant called the workman who had been in charge of unloading the car. He described in detail what he had done but he, too, gave no explanation of the escape of the vapor.

The Municipal Court Judge submitted the case to the jury upon the theories both of negligence and of nuisance. However, he did not charge the doctrine of *res ipsa loquitur,* having ruled earlier that that doctrine was not applicable to the case. In connection with the nuisance count, the court read to the jury section 1530 of the Penal Law, defining a public nuisance, and instructed the jury that "to find public nuisance under the evidence, it must fit under Subdivisions 1 or 4 of section 1530 of the Penal Law". Subsequently, upon the request of the jury for further instructions, the Judge withdrew the nuisance count from the jury's consideration and charged that section 1530 of the Penal Law was not applicable to the case. The jury returned a verdict of no cause of action as to all the plaintiffs.

Upon appeal to the County Court of Onondaga County, the judgments in favor of the defendant were reversed and a new trial was ordered upon the ground (1) that "the court should have submitted the case to the jury under the doctrine of *res ipsa loquitur*" and (2) that the court erred in withdrawing from the jury the "question of nuisance".

The order granting a new trial was obviously correct and must be affirmed. Upon the record, the verdict of no cause of action was clearly against the weight of the evidence. The inference was well nigh inescapable that on the occasion in question there had been some slip-up in the usual manner of conducting the operation or else that the operation was one which should not have been undertaken in the face of the weather conditions then prevailing.

We agree with the County Court that the trial court was in error in failing to submit the case under the doctrine of *res ipsa loquitur*. The operation which gave rise to the damage was wholly under the control of the defendant. It appeared that similar unloading operations had taken place at the defendant's plant for a period of over 40 years and that no similar damage to surrounding property had ever occurred. The defendant was in a position superior to that of the plaintiffs to explain what had gone wrong on the particular occasion. The circumstances warranted an inference of negligence on the part of the defendant, in the absence of an exculpatory explanation by it (*George Foltis, Inc.* v. *City of New York,* 287 N. Y. 108).

The court therefore should have charged the jury that the case was a *res ipsa* case or, putting it in another way, without the use of the Latin phrase, that the case was one in which, under the general principles of circumstantial evidence, an inference of negligence could be drawn from the happening of the occurrence under the circumstances established by the proof (*Markel* v. *Spencer,* 5 A D 2d 400, 409, affd. 5 N Y 2d 958). This is the type of case in which the *res ipsa* doctrine overlaps, or is merely a different form of stating, the general principles of circumstantial evidence. There are cases in which *res ipsa* has a special or added significance (e.g., *Plumb* v. *Richmond Light & R. R. Co.,* 233 N. Y. 285) but in a case of the type here involved *res ipsa* is merely " a common-sense appraisal of the probative value of circumstantial evidence " (*Galbraith* v. *Busch,* 267 N. Y. 230, 234). Therefore, either form of statement would have been satisfactory.

We find no merit in the defendant's contention that the plaintiffs forfeited their right to invoke the *res ipsa* doctrine or to rely upon an inference of negligence from the happening of the accident, because of the affirmative proof which the plaintiffs introduced. The plaintiffs' proof merely established the setting in which the defendant's negligence is alleged to have occurred. The plaintiffs' proof did not exculpate the defendant nor did it

'' purport to furnish a complete explanation of the occurrence ''. Hence, the plaintiffs were not precluded from relying upon *res ipsa* (Prosser, Torts [2d ed.], p. 214; *Citrola* v. *Eastern Air Lines,* 264 F. 2d 815; *De Roire* v. *Lehigh Val. R. R. Co.,* 205 App. Div. 549; *Christensen* v. *Surface Transp. Co. of N. Y.,* 283 App. Div. 349).

However, we do not agree with the County Court that the trial court erred in withdrawing from the jury's consideration, the theory of nuisance as a separate ground of recovery. Upon the present record, the nuisance, if any, in this case, was a nuisance growing out of negligence (*McFarlane* v. *City of Niagara Falls,* 247 N. Y. 340; *Delaney* v. *Philhern Realty Corp.,* 280 N. Y. 461). It was not '' an ' absolute ' nuisance, involving the creation of a noxious or hazardous condition irrespective of negligence '' (*Morello* v. *Brookfield Constr. Co.,* 4 N Y 2d 83, 90; see, also, *Dixon* v. *New York Trap Rock Corp.,* 293 N. Y. 509). The term '' absolute nuisance '', as used in this context, means an invasion of another's use and enjoyment of his premises brought about by the '' intentional and unreasonable '' conduct of the defendant (Restatement, Torts, § 822). It is obvious in the present case that the defendant did not intend to have the vapors escape and did not intend to have them invade the plaintiffs' premises. Neither was the invasion a result so '' substantially certain '' to follow from the defendant's conduct that the defendant is chargeable with having intended it (Restatement, Torts, § 825). The operation of the chemical plant, the defendant's intentional activity, was not of itself a nuisance. It was not shown by the proof to be an unreasonable activity, that is, an activity which the defendant should not have engaged in at all, either because of the degree of danger or noxiousness inherent in it or because of its unsuitability in the locality (Restatement, Torts, §§ 826–831). The case is simply one of a mishap which occurred in the course of carrying on a lawful and reasonable enterprise. The defendant could be held liable therefor in nuisance only upon a finding of negligence in causing or allowing the mishap to occur.

Where a nuisance arises solely from negligence, nothing is gained by submitting the case separately on the theory of nuisance (*Morello* v. *Brookfield Constr. Co., supra*). The liability of the defendant depends upon a finding of negligence and, if negligence is found, a recovery can be had on that ground; nothing of value is added by going through the circuitous process of making the finding of negligence the basis of a further finding of nuisance.

Neither is anything added to the plaintiffs' case by invoking section 1530 of the Penal Law. That section defines a public nuisance for the purpose of criminal prosecution as "unlawfully doing an act, or omitting to perform a duty, which act or omission" annoys, injures or endangers others in specified ways. The key word in the section is the word "unlawfully". The section applies only to "unlawful" conduct. As has been pointed out, the intentional conduct of the defendant was not unreasonable and hence it was not unlawful. So far as the unintentional or accidental escape of the harmful vapors is concerned, there may be criminal responsibility for that on the ground of negligence, if the negligence is shown to have been of a sufficiently aggravated degree (*People* v. *Borden's Condensed Milk Co.*, 165 App. Div. 711, affd. 216 N. Y. 658). But the invoking of the criminal statute on that theory would not be of any aid to the plaintiff in a civil action, since the defendant's liability would still rest upon a finding of negligence.

We therefore conclude that there was no error on the part of the trial court in withdrawing the whole question of nuisance, including the question of the applicability of section 1530 of the Penal Law, from the jury's consideration (*Morello* v. *Brookfield Constr. Co., supra*). However, as we have already indicated, the court's charge on the question of negligence was inadequate and the jury's verdict was against the weight of the evidence. For these reasons, the order reversing the judgments for the defendant and ordering new trials should be affirmed, with costs.

All concur. Present.— McCURN, P. J., KIMBALL, WILLIAMS, BASTOW and HALPERN, JJ.

Order affirmed, with costs.