Cooke, J.
"There is perhaps no more impenetrable jungle in the entire law than that which surrounds the word 'nuisance’. It has meant all things to all men” (Prosser, Torts [4th ed], p 571). From a point someplace within this oft-noted thicket envisioned by Professor Prosser, this appeal emerges.
Plaintiff leased a portion of the former Brooklyn Navy Yard for a period of five years commencing September 1, 1970. On the demised premises during the ensuing eight or nine months it conducted a storage and new car preparation business, the latter entailing over 50 steps ranging from services such as checking brakes to vehicle cleaning, catering to automobile dealers in the metropolitan area of New York City. Adjacent to the navy yard was defendant’s Hudson Avenue plant, engaged in the production of steam and electricity since about 1926. This generating system had five smokestacks and during *566 the time in question its burners were fired with oil having a sulphur content of 1% or less. Prior to 1968, coal had been the fuel employed and the main boiler was equipped with an electrostatic precipitator to remove or control the discharged fly ash. Upon conversion to oil, the precipitator had been deactivated.
Based on allegations that noxious emissions from defendant’s nearby stacks caused damage to the exterior of autos stored for its customers such as to require many to be repainted, that reports were received in early 1971 from patrons of paint discoloration and pitting, and that dealers served by plaintiff terminated their business by early May, plaintiff contends that because of said emissions it was caused to cease doing business on May 28, 1971. This action was instituted seeking $1,300,000 for loss of investment and loss of profit, under three causes of action respectively asserting "a deliberate and willful violation of the rights of plaintiff, constituting a nuisance”, a "wrongful and unlawful trespass” and violations of "New York City, New York State and federal laws, regulations and guidelines with respect to air pollution.” A fourth cause demanded exemplary and punitive damages of $1,000,000 because of defendant’s "wrongful and illegal acts.”
The case came on for jury trial in 1974. As a result of rulings made at junctures prior to submission for verdict, the third and fourth causes of action were dismissed and the second was merged with the first. After pointing out that plaintiff "framed his case on a branch of the law of wrongdoing called nuisance”, the trial court charged nuisance based on negligence and nuisance grounded on an intentional invasion of plaintiff’s rights. Negligence was defined and it was pointed out that, although contributory negligence may be a defense where the basis of the nuisance is merely negligent conduct, it would not be where the wrongdoing is founded on the intentional, deliberate misconduct of defendant. Contending that "nuisance is entirely separate and apart from negligence” and that "defendant’s intent or negligence is not * * * an essential element of the cause of action of nuisance”, plaintiff excepted to the portions of the charge relating to said subjects.
The jury found in defendant’s. favor and judgment was entered dismissing the complaint. The Appellate Division, by a divided court, affirmed, (52 AD2d 791) the majority stating that (p 792) "nuisance is a concept susceptible of more than *567 one meaning”, that "[w]hile an absolute nuisance need not contain within its definition a flavoring of negligence, a qualified nuisance may”, that "the testimony, especially that of the experts, as developed at trial, showed an inextricable intertwining of negligence with the nuisance claimed, though the complaint did not so frame the issue”, that "the proof portrayed the alleged wrong as 'a nuisance, though dependent upon negligence’ ”, and that, therefore under the circumstances, the instructions to the jury on the issue of negligence were correct. The dissenters, on the other hand, urged that (p 793) "[p]utting aside the possibility that there could be liability without fault, and in the absence of proof of negligence by the defendant * * * a cause of action in nuisance 'does not involve the element of negligence as one of its essential factors’ ”, that the "charge which mingled elements of nuisance and negligence could have been confusing to the jury” and that the "possibility of confusion was compounded by an instruction that the plaintiff, to succeed, was required to prove that the injury to its property was intentionally inflicted.” On appeal to this court, plaintiff maintains that the trial court erred in charging (1) that plaintiff was required to prove an intent of the defendant to cause damages, and (2) that plaintiff had a burden of proof as to defendant’s negligence and plaintiff’s freedom from contributory negligence.
Much of the uncertainty and confusion surrounding the use of the term nuisance, which in itself means no more than harm, injury, inconvenience, or annoyance (see Webster’s Third New International Dictionary, p 571; American Heritage Dictionary, p 900), arises from a series of historical accidents covering the invasion of different kinds of interests and referring to various kinds of conduct on the part of defendants (Prosser, Torts [4th ed], pp 571-572). The word surfaced as early as the twelfth century in the assize of nuisance, which provided redress where the injury was not a disseisin but rather an indirect damage to the land or an interference with its use and enjoyment. Three centuries later the remedy was replaced by the common-law action on the case for nuisance, invoked only for damages upon the invasion of interests in the use and enjoyment of land, as well as of easements and profits. If abatement by judicial process was desired, resort to equity was required. Along with the civil remedy protecting rights in land, there developed a separate principle that an infringement of the right of the crown, or of *568 the general public, was a crime and, in time, this class of offenses was so enlarged as to include any "act not warranted by law, or omission to discharge a legal duty, which inconveniences the public in the exercise of rights common to all Her Majesty’s subjects” (Stephen, General View of Criminal Law of England [1890], p 105). At first, interference with the rights of the public was confined to the criminal realm but in time an individual who suffered special damages from a public nuisance was accorded a right of action. (See Restatement, Torts, notes preceding § 822, pp 217-218; Prosser, Torts [4th ed], pp 572-573.)
A private nuisance threatens one person or a relatively few (McFarlane v City of Niagara Falls, 247 NY 340, 344), an essential feature being an interference with the use or enjoyment of land (Blessington v McCrory Stores Corp., 198 Misc 291, 299, affd 279 App Div 806, affd 305 NY 140). It is actionable by the individual person or persons whose rights have been disturbed (Restatement, Torts, notes preceding § 822, p 217). A public, or as sometimes termed a common, nuisance is an offense against the State and is subject to abatement or prosecution on application of the proper governmental agency (Restatement, Torts, notes preceding § 822, p 217; see Penal Law, § 240.45). It consists of conduct or omissions which offend, interfere with or cause damage to the public in the exercise of rights common to all (New York Trap Rock Corp. v Town of Clarkston, 299 NY 77, 80), in a manner such as to offend public morals, interfere with use by the public of a public place or endanger or injure the property, health, safety or comfort of a considerable number of persons (Melker v City of New York, 190 NY 481, 488; Restatement, Torts, notes preceding § 822, p 217).
As observed by Professor Prosser, public and private nuisances "have almost nothing in common, except that each causes inconvenience to someone, and it would have been fortunate if they had been called from the beginning by different names” (Prosser, Torts [4th ed], p 573). Not only does confusion arise from sameness in denomination and from the lack of it in applicability, but also from the fact that, although an individual cannot institute an action for public nuisance as such, he may maintain an action when he suffers special damage from a public nuisance (Restatement, Torts, notes preceding § 822, p 217; Wakeman v Wilbur, 147 NY 657, 663-664).
*569 This developmental tracing indicates the erroneous concept under which appellant labors. It also points out that nuisance, as a general term, describes the consequences of conduct, the inconvenience to others, rather than the type of conduct involved (2 NY PJI 653). It is a field of tort liability rather than a single type of tortious conduct (Prosser, Torts [4th ed], p 573).
Despite early private nuisance cases, which apparently assumed that the defendant was strictly liable, today it is recognized that one is subject to liability for a private nuisance if his conduct is a legal cause of the invasion of the interest in the private use and enjoyment of land and such invasion is (1) intentional and unreasonable, (2) negligent or reckless, or (3) actionable under the rules governing liability for abnormally dangerous conditions or activities (Restatement, Torts 2d [Tent Draft No. 16], § 822; Prosser, Torts [4th ed], p 574; 2 NY PJI 653-654; see Spano v Perini Corp., 25 NY2d 11, 15; Kingsland v Erie Co. Agric. Soc., 298 NY 409, 426-427; Wright v Masonite Corp., 237 F Supp 129, 138, affd 368 F2d 661, cert den 386 US 934).
In urging that the charge in respect to negligence constituted error, plaintiff’s brief opens its discussion with the assertion that "[t]he complaint contained no allegations of negligence and its theory was that of nuisance.” This statement is significant in that not only does it miss the fundamental difference between types of conduct which may result in nuisance and the invasion of interests in land, which is the nuisance, but it also overlooks the firmly established principle that negligence is merely one type of conduct which may give rise to a nuisance. A nuisance, either public or private, based on negligence and whether characterized as either negligence or nuisance, is but a single wrong (Morello v Brookfield Constr. Co., 4 NY2d 83, 90), and "whenever a nuisance has its origin in negligence”, negligence must be proven and a plaintiff "may not avert the consequences of his [or her] own contributory negligence by affixing to the negligence of the wrongdoer the label of a nuisance” (McFarlane v City of Niagara Falls, 247 NY 340, 344-345, supra; Khoury v County of Saratoga, 267 NY 384, 389; Lyman v Village of Potsdam, 228 NY 398, 401-402, 405; Herman v City of Buffalo, 214 NY 316, 320-321; 2 Harper & James, Torts, pp 1223-1224; 2 Shearman & Redfield, Negligence [rev ed], p 919; see Nuisance-Damages-Defenses, Ann., 73 ALR2d 1378, 1387; but see *570 CPLR 1411-1413). Although during trial an issue as to causation developed, whether the deleterious substances reaching the customers’ vehicles in plaintiff’s custody had their origin at defendant’s Hudson Avenue property or elsewhere, plaintiff introduced the testimony of different witnesses in support of its contention that defendant operated its plant in a negligent manner. While plaintiff offered expert proof to the effect that it was the general custom or usage in the power plant industry, during the period in question, to use collectors or precipitators, or both, on oil-fired boilers and also to use magnesium as a fuel oil additive to reduce the formation of acid bearing particulates, defendant submitted testimony from similar sources that mechanical and electrostatic precipitators are not commonly utilized on oil-fired burners and that defendant actually was using manganese as an additive.
Besides liability for nuisance arising out of negligence and apart from consideration of a nuisance resulting from abnormally dangerous or ultrahazardous conduct or conditions, the latter of which obviously is not applicable here (see Restatement, Torts 2d, § 822 [Tent Draft No. 16]; Restatement, Torts, § 822; Spano v Perini Corp., 25 NY2d 11, supra; 1 Harper & James, Torts, p 68; Prosser, Torts [4th ed], p 575), one may be liable for a private nuisance where the wrongful invasion of the use and enjoyment of another’s land is intentional and unreasonable. It is distinguished from trespass which involves the invasion of a person’s interest in the exclusive possession of land (Restatement, Torts, notes preceding § 822, pp 224-225; Prosser, Torts [4th ed], pp 594-596). The elements of such a private nuisance, as charged in effect by the Trial Justice, are: (1) an interference substantial in nature, (2) intentional in origin, (3) unreasonable in character, (4) with a person’s property right to use and enjoy land, (5) caused by another’s conduct in acting or failure to act (Restatement, Torts, § 822; Nussbaum v Lacopo, 27 NY2d 311, 315; McCarty v Natural Carbonic Gas Co., 189 NY 40, 49-50; Cogswell v New York, New Haven & Hartford R. R. Co., 103 NY 10, 13-15; Campbell v Seaman, 63 NY 568, 576-577; Prosser, Torts [4th ed], p 593; 1 Harper & James, Torts, pp 67-68; 2 NY PJI, Comment, p 660). Thus, plaintiff’s exception that "defendant’s intent * * * is not * * * an essential element of the cause of action of nuisance” and its criticism of the charge, which was to the effect that as to the private nuisance plaintiff was required to prove that defendant’s conduct was intentional, are not well *571 taken. "An invasion of another’s interest in the use and enjoyment of land is intentional when the actor (a) acts for the purpose of causing it; or (b) knows that it is resulting or is substantially certain to result from his conduct” (Restatement, Torts, § 825; McKenna v Allied Chem. & Dye Corp., 8 AD2d 463, 467; see Richardson, Evidence [10 ed], § 90).
Negligence and nuisance were explained to the jury at considerable length and its attention was explicitly directed to the two categories of nuisance, that based on negligence and that dependent upon intentional conduct. The causes accrued, if at all, prior to the applicable date of the new CPLR article 14-A (CPLR 1411-1413), and the trial court properly charged that contributory negligence may be a defense where the nuisance is based on negligent conduct (McFarlane v City of Niagara Falls, 247 NY 340, 344-345, supra). As to nuisance involving a willful or intentional invasion of plaintiffs rights, the jury was instructed that contributory negligence was not a defense and, in this respect, plaintiff was not prejudiced and has no right to complain (see Prosser, Torts [4th ed], § 91, pp 608-612; 2 Harper & James, Torts, § 22.8, pp 1219-1227; Nuisance-Damages-Defenses, Ann., 73 ALR2d 1378, 1390-1395; 2 NY PJI 664).
Boomer v Atlantic Cement Co. (26 NY2d 219, revg 30 AD2d 480 and 55 Misc 2d 1023), relied on by plaintiff, does not dictate a contrary result. There, Supreme Court found that defendant maintained a nuisance, same was affirmed by the Appellate Division, and the Court of Appeals concerned itself with the relief to be granted. Although Trial Term did specifically mention the type of nuisance it found, it is obvious that it was not a nuisance in which the substance of the wrong was negligence since it was held that "the evidence in this case establishes that Atlantic took every available and possible precaution to protect the plaintiffs from dust” (55 Misc 2d, at p 1024). Rather, it would appear that the nuisance found was based on an intentional and unreasonable invasion, as it was stated that "[t]he discharge of large quantities of dust upon each of the properties and excessive vibration from blasting deprived each party of the reasonable use of his property and thereby prevented his enjoyment of life and liberty therein” (55 Misc 2d, at pp 1024-1025). Contrary to plaintif s assertion, Boomer does not negate the necessity of proving negligence in some nuisance actions involving harmful emissions, since *572 negligence is one of the types of conduct on which a nuisance may depend.
Although there are some Judges in the majority who are of the opinion that the charge did not furnish a model of discussion on some subjects, all of that group agree that reversal on the basis of the charge would not be warranted.
The order of the Appellate Division should be affirmed, with costs.