OPINION OF THE COURT
Herbert A. Posner, J.
In this CPLR article 78 proceeding, petitioners seek a judgment enjoining respondents from utilizing the Kennedy Inn as a shelter for homeless families, and directing respondents to comply with the Uniform Land Use Review Procedure (hereinafter ULURP) set forth in section 197-c of the New York City Charter and with section 203 of the City Charter, commonly known as the "fair share” rules.
Petitioners James Davis, Ruby Ward and Alfred R. Johnson, Jr., are homeowners and taxpayers residing in the immediate *520 vicinity of the Kennedy Inn, a privately owned commercial hotel located at 151-20 Baisley Boulevard, Jamaica, New York. The hotel is located within Community Board 12 Queens, and Mr. Davis is the chairperson of said Community Board.
In September 1991, a representative of the Kennedy Inn telephoned Kenneth Murphy, Deputy Commissioner of the Human Resources Administration Crisis Intervention Services (hereinafter HRA), and stated that the hotel was willing to rent a large number of rooms to homeless families, to be referred by the agency. Mr. Murphy discussed the applicable State regulations for hotels utilized by recipients of emergency shelter grants (18 NYCRR 352.3 [g]), inquired as to whether meal services could be provided and suggested that the hotel calculate a room rate. HRA staff members visited the hotel in September and November 1991 in order to assess the facility and the surrounding community. Mr. Murphy, after several more telephone conversations with the hotel’s representative, visited the facility in January 1992. The hotel was undergoing renovations at that time, which included the removal of carpets and wallpaper, covering over mirrors and repainting. Mr. Murphy informed the hotel representative that the hotel would have to install window guards and provide each room with the necessary furniture and furnishings. It was also suggested that the hotel install a safety rail on a bannister leading to the basement. Mr. Murphy gave the hotel representative a copy of a menu used by a caterer who had direct contracts with shelters run by the HRA. The hotel was not required to use this caterer but Mr. Murphy stated that he expected the hotel to provide nutritionally balanced meals.
The hotel agreed to make available up to 150 of its 189 rooms, to be occupied by homeless families referred by HRA. HRA, however, did not give the hotel a firm date on which it would begin to make such referrals. It was further agreed that HRA would not pay for any vacant rooms, and the agency gave no guarantee that it would use this hotel for any set period of time. The hotel, in turn, did not make any commitment to reserve any particular rooms or block of rooms to be used by homeless families. Mr. Murphy now asserts that while the hotel agreed not to rent rooms to other guests on an hourly basis, it remains free to rent rooms to guests other than homeless families. In letters dated December 9, 1991 and December 11, 1991, HRA, however, informed then chairperson of Community Board 12 and Queens Borough President Claire Shulman of its intention to refer homeless families to the *521 Kennedy Inn and stated that no other guests would be registered in the hotel once the homeless families were referred to the facility. The tenants of the hotel’s bar, coffee shop and night club vacated the premises some time prior to the HRA’s first referral of homeless families. There is no indication, however, that the hotel representatives discussed these tenants’ leases with HRA or that these tenants vacated the premises at the insistence of respondents. The hotel presently rents store space in its lobby to a private vendor who sells newspapers, magazines, candy and household sundries. Respondents did not request that the hotel provide such services to the homeless families, and were not a party to this agreement and were not required to approve this agreement.
HRA and the hotel’s representatives negotiated a room rate of $105 per day, which includes the applicable sales tax, hotel occupancy tax and occupancy charges, and meals for adults and children over one year of age. Families with children under one year of age receive a food allowance for formula and baby food. Homeless families referred to the Kennedy Inn each receive an emergency shelter allowance which is used to pay for their room and board. (18 NYCRR 352.3.) The shelter allowance may be issued in the form of a two-party check or the recipient may authorize the HRA to pay the rent directly to the vendor. Homeless families at the Kennedy Inn have all signed written authorization forms which allow HRA to pay the emergency shelter allowance directly to the hotel. HRA will make payments to the hotel on a monthly basis, by means of a direct electronic transfer of funds to a bank account number supplied by the hotel. The bills submitted by the hotel are reviewed and audited by HRA prior to the transfer of any funds. Homeless families may withhold their emergency shelter allowance by notifying HRA to withhold the rent. Regardless of the method of payments, HRA cannot use the emergency shelter funds for any purposes other than paying for emergency housing and meals, as these funds belong to the recipient families and not the HRA.
HRA began referring and transporting homeless families to the Kennedy Inn on February 11, 1992, and as of February 22, 1992, 108 families occupied rooms in the hotel. Upon arrival at the hotel, each family completes a hotel registration form and the hotel management retains the room keys. The hotel provides the furniture and furnishings in each room, utilities, maid service, meal services and security services. Respondents do not maintain any insurance policies for the hotel or its *522 occupants. Families referred to the hotel are not required to stay there and may leave at anytime. However, there is no limit on the amount of time a homeless family may stay at the hotel. The hotel management may also request that a family leave the hotel but if a homeless family resides in a hotel for 30 days or more, it can be evicted only pursuant to the city’s unlawful eviction statute, even if its shelter grant has been terminated by HRA. (Administrative Code of City of New York §26-521.)
The hotel has also made space available in its lobby and lower level for on-site services provided by seven Social Services employees, two nurses employed by the Department of Health and two employees of the Board of Education. Respondents do not pay rent for the use of this space, which is cleaned and maintained by the hotel’s staif. Similar on-site services are provided at other commercial hotels in which large numbers of homeless families reside. On-site employees at the Kennedy Inn do not have access to unoccupied rooms and may enter a room occupied by a homeless family only with the consent of the family. The hotel has also agreed to make available the former night club space for special programs for the families.
Petitioners now seek judgment enjoining respondents from utilizing the Kennedy Inn as a shelter for homeless families and directing that respondents conduct ULURP and "fair share” proceedings. Petitioners, in their supplemental petition, contend that respondents’ agreement with the Kennedy Inn constitutes a lease, and therefore they were required to conduct ULURP and fair share proceedings prior to entering into this agreement. They claim that the Kennedy Inn was converted to a facility to house homeless families as part of a plan adopted by respondents to close the Catherine Street Shelter, a Tier II facility in Manhattan and convert it to an assessment center and that homeless families residing at the Catherine Street Shelter were referred to and transported to the Kennedy Inn by HRA. Petitioners, in seeking injunctive relief, maintain that the use of the Kennedy Inn by 150 homeless families will create a threat to the health and safety of community residents and will have an adverse impact on the community. Relief is also sought by the petitioners, as taxpayers, against the respondents, pursuant to section 51 of the General Municipal Law, for violating the City Charter by entering into a lease without authority.
Respondents, in opposition, assert that petitioners lack *523 standing to bring this proceeding and that it should be dismissed for the failure to join the hotel owner and the homeless families as necessary parties. Respondents also contend that there was no lease agreement with the Kennedy Inn, as the referral of homeless families and the payment of emergency shelter allowances do not constitute a contract with the hotel and, therefore, these arrangements are not subject to ULURP or the "fair share” criteria. Lastly, respondents maintain that, in any event, petitioners’ allegations are insufficient to warrant injunctive relief and that petitioners fail to establish any right to maintain a taxpapers’ action pursuant to section 51 of the General Municipal Law.
 At the outset the court finds that petitioners, as property owners in the immediate vicinity of the Kennedy Inn, have standing to seek judicial review of respondents’ conduct. (See, Matter of Douglaston Civic Assn. v Galvin, 36 NY2d 1; Greentree at Murray Hill Condo v Good Shepherd Episcopal Church, 146 Misc 2d 500, 505.) The court further finds that the failure to join the homeless families and the hotel owner as parties is not fatal to this proceeding. In Town of Brookhaven v Chun Enters. (71 NY2d 953), relied upon by the respondents, neither the Commissioner of Social Services of Suffolk County nor any representative of the homeless aid recipients was named as a party. In this proceeding, HRA is one of the respondents and is available to represent and protect the rights of the homeless families. The hotel owner is not an indispensable party to this proceeding since the petitioners do not seek to terminate the lease between the Kennedy Inn and HRA, but only to require compliance with the ULURP and "fair share” procedures of the City Charter. (See, Matter of Castaways Motel v Schuyler, 24 NY2d 120.)
Accordingly, the court turns to the substantive issue of whether a lease existed between respondents and the Kennedy Inn. It is well settled that the test for determining what constitutes a lease, as distinguished from other rights or interests, is not necessarily the descriptive language used, but whether it is the manifest intent of the parties that exclusive control and possession of specified space for a specified term has been granted. Thus, it is the transfer of absolute control and possession of property at an agreed rental which differentiates a lease from other arrangements dealing with property. (74 NY Jur 2d, Landlord and Tenant, §§ 9, 17, 30; Feder v Caliguira, 8 NY2d 400.)
In the case at bar, the court finds that respondents’ *524 agreement with the Kennedy Inn constitutes an oral lease as there was a transfer of control and possession of 150 rooms for exclusive use by homeless families placed therein by the HRA. HRA agreed to pay $105 per day, per room for each homeless family with the payments to be made by direct electronic deposit into the hotel’s bank account. Moreover, hotel occupancy was restricted to the 150 homeless families since no other persons were to be housed in the hotel. The hotel also agreed to provide respondents in excess of 750 square feet for use by employees of city agencies to provide on-site services to homeless families and to make available additional common space for use by homeless families. The hotel facilities that were open to the public have been closed and the hotel is being used exclusively by the homeless families occupying the hotel rooms. These terms and conditions are sufficient to establish an oral lease between respondents and the hotel, terminable at will by either party.
 Inasmuch as a lease exists, respondents are required to comply with the ULURP and "fair share” procedures set forth in section 197-c (a) (11) and section 203 of the City Charter. Petitioners’ allegations, however, are insufficient to support a taxpayer’s action pursuant to section 51 of the General Municipal Law. As in Matter of Korn v Gulotta (72 NY2d 363, 375), "there is nothing to indicate that respondents acted with anything less than complete good faith or with any intention of harming the public and * * * there is thus no basis for a prosecution under section 51 to hold them personally responsible.” (Also see, Mesivta of Forest Hills Inst. v City of New York, 58 NY2d 1014; Gaynor v Rockefeller, 15 NY2d 120.)
Petitioners’ request for injunctive relief is also denied since they have failed to demonstrate that irreparable injury will arise from the continued use of the Kennedy Inn to house homeless families. Their claims that the community lacks sufficient transportation, shopping, schools and other essentials to accommodate these families, and that living conditions in the hotel will be substandard, as well as their fears of a diminution of property values, are speculative in nature and are unsupported by any articulable facts. Therefore, immediate injunctive relief is not warranted. Even more importantly, the granting of such relief is inappropriate under the circumstances now existing in New York City. The indisputable compelling need to provide temporary housing for homeless families clearly makes it an abuse of discretion to preclude *525 the use of a hotel which is already housing these families. (See, Matter of Gerges v Koch, 62 NY2d 84, 95-96; Matter of Greenpoint Renaissance Enter. Corp. v City of New York, 137 AD2d 597, 601; Greentree at Murray Hill Condo v Good Shepherd Episcopal Church, 146 Misc 2d 500, supra.)
In view of the foregoing, the within petition is granted to the extent that respondents are directed to conduct ULURP and fair share proceedings within 20 days after service of a copy of the judgment to be entered herein.