FLORENCE MAULDIN, Individually and as Treasurer of Citizens Against Bus Exhaust, et al., Respondents-Appellants, v NEW YORK CITY TRANSIT AUTHORITY et al., Appellants-Respondents.

Second Department, September 11, 1978

## APPEARANCES OF COUNSEL

*Allen G. Schwartz, Corporation Counsel (Richard Bowers, L. Kevin Sheridan* and *Stephen P. Kramer* of counsel), for City of New York, appellant-respondent.

*Alphonse E. D'Ambrose (Walter J. McCarroll* of counsel), for New York City Transit Authority, appellant-respondent. (Relying upon the brief submitted on behalf of the City of New York.)

*Philip J. Kaplan* for respondents-appellants.

## OPINION OF THE COURT

HAWKINS, J.

In this action, *inter alia,* for injunctive relief and a judgment declaring a certain permit, issued by the Department of Water Resources of the defendant City of New York to the defendant New York City Transit Authority, to be void, the parties have cross-appealed from an order which, *inter alia,* (1) denied the city's motion to dismiss the complaint and (2) declared the permit in question to be void.

The order should be modified by deleting therefrom the provisions which granted a permanent injunction and which declared the permit to be void.

Special Term, in permanently restraining the use by the Transit Authority of the subject premises to "store, stage or idle buses", and in declaring the "lease" to be void, without a hearing, accorded plaintiffs all the relief to which they would be entitled if they had ultimately prevailed after a trial or a full hearing.

The authorization whereby the Transit Authority has been using the property, which is owned by the City of New York, for staging, parking and idling its buses, was arrived at most informally. It appears to consist merely of an exchange of letters between the commissioner of the city's Environmental Protection Administration (E.P.A.) and the senior executive officer of the Transit Authority, confirmed by the latter's response and acceptance. The Transit Authority is referred to in the correspondence as the "permittee". The offering letter contains some eight stipulations, or "special conditions", the

last of which significantly provides: "It is understood and agreed that the Department [Environmental Protection Administration] shall have the privilege of cancelling this permit at any time by giving the permittee thirty (30) days prior written notice of such intention."

Thus, there is present the most essential attribute distinguishing a license from a lease for the grantor has reserved the untrammeled right to revoke unilaterally.

The sole decisional authority cited to support classifying the relationship as that of lessor and lessee, as against that of licensor and licensee is *Miller v City of New York* (15 NY2d 34, affg 20 AD2d 720). It is, however, clearly inapplicable to the relationship at bar. The Court of Appeals, in affirming the order of this court in *Miller,* held that the park commissioner was without authority to execute an agreement with a private business corporation granting it the right to construct a golf driving range with accessory buildings, including shops and a parking lot, on a 30-acre site in a public park in the Borough of Queens on a percentage rental lease for 20 years. The instrument certifying such arrangement was deemed to be a lease and not a mere revocable license, grant of a privilege or a concession, which the commissioner could revoke at will.

A further distinguishing factor exists in *Miller,* for that property was impressed with a trust for the public thus requiring legislative sanction for alienation. The parties to that agreement sought to evade the restrictions by denominating the agreement to be a revocable permit. The very terms, however, belied such designation.

The court in *Miller* was closely divided. On the issue of whether a licensee may or may not obtain an estate in land, the language of the dissenting opinion of Judge BERGAN (Judges FULD and SCILEPPI concurring), is particularly pertinent (p 39): "Historically, and in legal concept, a lease is an estate in land. For the time of its duration the lessee possesses a dominant right in the land. The grant in the instrument before us is certainly less than this. No estate in realty has been created. The licensee must know when he reads the pertinent statute, as well as the court must know when it comes to construe the instrument, that the land itself is 'inalienable' (New York City Charter, § 383) and hence the Commissioner could grant, and the licensee take, no interest in the real property itself."

It would appear that the plaintiffs here are particularly

aggrieved, and understandably so, by the protracted idling of the buses at the facility. The buses are kept there so as to avoid the expense and wasteful practice of their being "dead headed". It should be noted that in the letter by the commissioner of the E.P.A., the Transit Authority is expressly limited in conducting such idling practices. One of the "special conditions" provides: "The permittee shall not allow the staging of the buses on Rector Street * * * nor the idling of buses more than three minutes".

■ It may well be, as alleged, that the idling persists for protracted periods far in excess of the three-minute limitation; if so, such practice, apart from constituting a nuisance, is in direct violation of the agreement.

■ The theory underlying the order under review is that the "permit" or "license" is, in reality, a lease. Section 384 (subd a) of chapter 15 of the New York City Charter provides that "[n]o real property of the city may be sold, leased, exchanged or otherwise disposed of except with the approval of the board of estimate". Under section 734 (1)-12.0 of the Administrative Code of the City of New York, however, no interest in realty is conferred since this is a permit which may be terminated upon 30 days' notice. Under the latter provision, "revocable consent" is construed as the equivalent of a revocable permit.

Plaintiffs have argued that the permit, even if not a lease, is nevertheless subject to the requirements of section 197-c of the City Charter. Although we agree that the provisions of 197-c of the charter should be liberally construed, the applicability of that section is necessarily limited to the 11 paragraphs of subdivision a thereof. It is insufficient to refer to the general introductory language of the section without also specifying which of the paragraphs of subdivision a is applicable. We have already determined that the subject permit is not a lease (see New York City Charter, § 197-c, subd a, par [10]) and the plaintiffs have failed to identify which of the other paragraphs may be applicable. We note that on the present record, it appears that paragraph (6) of subdivision a of section 197-c of the charter, which deals with revocable consents issued pursuant to chapter 14 of the charter, is not applicable.

In the circumstances of the instant case, it was inappropriate summarily to dispose of the matter. The permanent injunction here granted is of drastic impact. If, indeed, the

plaintiffs' purposes are to abate a nuisance, its cessation may lie irrespective of whether the Transit Authority's occupancy is subject to the provisions of section 197-c of the charter.

Accordingly, the order should be modified by deleting therefrom the provisions which voided the permit and which granted the permanent injunction. Leave should be granted to plaintiffs to amend their complaint so as to plead other available, alternative relief, if they be so advised.

MARTUSCELLO, J. P., LATHAM and RABIN, JJ., concur.

Order of the Supreme Court, Richmond County, dated March 21, 1977, modified by deleting the second and third decretal paragraphs thereof and substituting therefor a provision denying the branches of plaintiffs' motion which sought injunctive and declaratory relief. As so modified, order affirmed, without costs or disbursements, and plaintiffs are granted leave to amend their complaint, if they be so advised, so as to plead other available, alternative relief. Plaintiffs' time to serve an amended complaint is extended until 20 days after service upon them of a copy of the order to be made hereon, together with notice of entry thereof.