York County (Shirley Levittan, J.), rendered on June 4, 1985, unanimously affirmed.

Application by appellant's counsel to withdraw as counsel is granted. *(See, Anders v California,* 386 US 738; *People v Saunders,* 52 AD2d 833.) We have reviewed this record and agree with appellant's assigned counsel that there are no nonfrivolous points which could be raised on this appeal. Concur—Kupferman, J. P., Sullivan, Ross, Asch and Milonas, JJ.

■ DAVID BERG et al., Appellants, v IRVING DIMSON et al., Respondents, et al., Defendant.—Order, Supreme Court, New York County (Alvin Klein, J.), entered on June 15, 1987, unanimously affirmed, without costs and without disbursements. The appeal from the order of said court, entered on October 7, 1987, unanimously dismissed as nonappealable without costs and without disbursements. No opinion. Concur —Kupferman, J. P., Ross, Rosenberger, Ellerin and Smith, JJ.

(February 26, 1988)

■ In the Matter of SHELDON SILVER et al., Respondents, v EDWARD I. KOCH, as Mayor of the City of New York, et al., Appellants.—Order of the Supreme Court, New York County (Shirley Fingerhood, J.), entered November 13, 1987, which preliminarily enjoined the respondents from transferring any prisoners or staff to Pier 36 or to the barge, *The Bibby Venture,* and which set the matter down for an evidentiary hearing as to whether an emergency situation exists and as to whether the use of the pier and barge is and will be of a temporary nature, reversed, on the law and facts, and in the exercise of discretion, and petitioners' motion for preliminary injunctive relief denied, without costs or disbursements.

Respondents selected Pier 36 for the temporary mooring of a prison barge to alleviate overcrowding elsewhere. Petitioners commenced this proceeding to compel respondents to comply with Uniform Land Use Review Procedure (ULURP), State Environmental Quality Review (SEQRA) and City Environmental Quality Review (CEQR) procedures and also to preliminarily and permanently enjoin further action with respect to the preparation of the pier for the mooring of the barge.

Since petitioners have failed to show the applicability of ULURP, SEQRA or CEQR to the actions of the respondents,

the grant of a preliminary injunction by the IAS court was an abuse of discretion. Furthermore, petitioners did not establish their likelihood of success on the merits, irreparable harm to them absent the grant of the relief sought, nor a balance of the equities in their favor (see, Grant Co. v Srogi, 52 NY2d 496, 517).

Petitioners' position that the use and preparation of Pier 36 for the temporary mooring of the prison barge requires ULURP review since it is, first, a disposition of city-owned property (NY City Charter § 197-c [a] [10]) and, second a site selection for a capital project (NY City Charter § 197-c [a] [5]), is not persuasive.

The employment of Pier 36 to moor a prison barge, temporarily, has not changed its preexisting use. The pier shed and accompanying wharf property will improve the use of the pier and not change its character as a pier. The Commissioner of the Department of Ports, International Trade and Commerce issued a permit for the use and occupancy of the pier for the period October 25, 1987 through October 24, 1988. The granting of such a license, terminable by the grantor upon 30 days' written notice, is not a "lease" which would constitute a disposition of city property pursuant to section 197-c (a) (10), so as to trigger the application of ULURP (Mauldin v New York City Tr. Auth., 64 AD2d 114). Similarly, the Court of Appeals has held that the issuance by the Federal Government of a revocable license to the city to renovate and temporarily occupy a former naval facility as a medium-security prison site, pending possible sale to the city, was not a disposition of real property within the meaning of New York City Charter § 197-c (a) (10) (see, Matter of Gerges v Koch, 62 NY2d 84, 92).

Paragraph (5) of section 197-c (a) of the New York City Charter brings "[s]ite selection for capital projects" within the ambit of ULURP review. In Matter of Gerges v Koch (supra), the Court of Appeals found that the execution of the license for occupancy of the Brig did constitute a site selection for a capital project. However, in that case, over $20 million in contracts had been approved for the project and specifically allocated to line items in the capital budget. Here, on the other hand, only $1.6 million have been allocated from the general expense budget for the Correction Department, for minor repairs and improvements on Pier 36. Significantly, even though the Court of Appeals found that the expenditure was a capital one, that court approved the project.

Second, petitioners claim that the intended use of Pier 36

constitutes action which may significantly affect the environment and which, hence, must be reviewed under ECL article 8 (SEQRA), its implementing regulations under 6 NYCRR part 617, and SEQRA's local counterpart, Mayoral Executive Order No. 91 of 1977, which establishes standards for City Environmental Quality Review.

However, the SEQRA regulations specifically exempt from such environmental review all "emergency actions which are immediately necessary on a limited and temporary basis for the protection or preservation of life, health, property or natural resources, provided that such actions are directly related to the emergency and are performed to cause the least change or disturbance, practicable under the circumstances, to the environment" (6 NYCRR 617.2 [q] [4]). "[A]ctions which are immediately necessary on a limited emergency basis for the protection or preservation of life * * * property or natural resources" are likewise exempt from the CEQR provisions (CEQR § 4 [h]). The temporary mooring of the prison barge is an emergency taken to ameliorate the Correction Department's urgent need for additional beds to comply with the orders of the Federal District Court in a pending action. The IAS court abused its discretion in ordering a hearing to determine whether an emergency exists.

"The standard of review is not whether we or the courts below would conclude that a limited emergency exists; it is rather whether the determination by the Commissioner of Correctional Services that such an emergency exists was irrational or arbitrary or capricious. In our view the commissioner could reasonably find that the * * * project represents emergency action within the meaning of the applicable regulation, sufficient to provide some dispensation from the requirements generally governing environmental statements.

"The petitioners urge that the regulation was only 'intended to allow immediate steps to be taken during a limited emergency such as blocking off a water source when a dam breaks'. Concededly the case now before us does not present the classic example where immediate action is required to meet an emergency in which the effect of the action may be immediately realized. There is apparently no quick solution which will immediately eliminate the problems of overcrowded jails. But that does not mean that there is no crisis or that there is no need to take immediate action to lay the foundation for a program which may provide relief in the near future. State officials confronted with an ever increasing influx of inmates into a prison system, already filled to well over 100% of

capacity, can hardly be said to be acting irrationally if they conclude that some action must be taken immediately to avert in the future the violence which has occurred in the past.

"Neither can it be said that the decision to take immediate action at this time is unreasonable because prison overcrowding is a problem of long standing in this State. Emergencies are often precipitated by the failure to take needed action in the past despite adequate warning. Certainly in the example provided by the petitioners no one would suggest there was no emergency and that public officials would be required to file an environmental impact statement before they could divert a water source in the face of a bursting dam if the potential defect in the dam had long been a matter of common knowledge." *(Matter of Board of Visitors—Marcy Psychiatric Center v Coughlin,* 60 NY2d 14, 20; *see also, Midtown S. Preservation & Dev. Comm. v City of New York,* 130 AD2d 385, 387-388.)

The court cannot substitute its own discretion for that of the Commissioner and decide, on the basis of its own research, or findings after testimony, that there is no emergency. It is limited to finding whether the declaration of emergency issued by the Correction Commissioner was rationally based and not arbitrary or capricious.

Perhaps the Mayor's solution does not represent our solution of choice. But we are not the chief executive. The narrow legal question with which this court is presented is whether the Mayor of New York City has fulfilled his legal responsibility under law. And this legal question has been answered by the Court of Appeals of New York.

The Court of Appeals has held, in *Matter of Gerges v Koch (supra),* a case very similar to the one before us and one in which the movant showed an even greater right to injunctive relief than the petitioners herein, that such relief should be denied in the exercise of responsible judicial discretion. The Court of Appeals in *Gerges,* as are we, was faced with an emergency of compelling and dangerous dimension. It found that:

"The determination of the availability of such relief depends not alone on the right of the party seeking it but as well on the appropriateness of its issuance in the circumstances in which it is sought.

"We turn then to the present circumstances in which petitioners seek injunctive relief at our hands. The City's license of the Brig is an accomplished fact, fully recognized by both

the City and the Federal Government. Similarly, we are informed that renovation of the Brig for the receipt of 200 prisoners has now been completed and that their transfer is held up only in consequence of the outstanding stay issued by our court on May 10, 1984. We take note that respondents are confronted, in consequence of orders of the Federal courts and otherwise, with an emergency of compelling and dangerous dimension and seriousness. That this emergency might have been foreseen and that municipal officials may have been derelict in not earlier having made appropriate provision for its resolution and having assured the availability of adequate detention facilities does not negate the existence of the present crisis. Inaction of the past may have been justifiable or at least explainable; in any event the calendar cannot be turned back. It would serve no appropriate or useful purpose now to fashion relief as a sanction for action and inaction beyond recall.

"Focusing on the present compelling need of the City to make additional detention facilities immediately available and the evident desire on all sides to avoid a repetition of the premature release in November, 1983 of 613 detainees, it would be an abuse of discretion on our part to preclude the immediate use by the City of detention facilities which are now ready and available. For us to mandate that such facilities stand vacant pending resolution of the continuing controversy between the parties would be judicially irresponsible in view of the dangerously close approach of the inmate population to mandated limits. We recognize the fact that 'the dynamics and freedom of decision-making with respect to a proposal to rescind a prior action are significantly more constrained than when the action is first under consideration for adoption' (Matter of Tri-County Taxpayers Assn. v Town Bd., 55 NY2d 41, 46), and that full and fair evaluation of the merits of any project may be more difficult after that project has been permitted to progress through substantial implementation. Nonetheless, in the singular circumstances with which we are all confronted on this appeal, we conclude that injunctive relief should be denied and petitioners relegated to seek such judicial review and relief as they may desire and as may be available" (Matter of Gerges v Koch, supra, at 95-96).

These considerations in Gerges (supra) must apply, a fortiori, to our case. Concur—Asch, J. P, Milonas, Rosenberger and Smith, JJ.