OPINION OF THE COURT
Edward H. Lehner, J.
In this action, which was commenced in December 1989, plaintiffs (acting pro se) are seeking an order annulling the decisions of defendants which imposed fare increases that became effective January 1, 1990 on transit facilities under their jurisdiction. Plaintiffs assert that the actions were unlawful as a consequence of the defendants’ failure to file an environmental impact statement (EIS) as required by the State Environmental Quality Review Act (SEQRA) (ECL art 8).
By decision dated December 27, 1989, Justice Martin Evans denied plaintiffs’ application for a temporary injunction barring the increase. He found that they were not likely to succeed on the merits because section 1205 (6) of the Public Authorities Law provides that fare increases imposed by the New York City Transit Authority (TA) are not "actions” that require the filing of an EIS under ECL 8-0109.
At' oral argument of defendants’ motion to dismiss the complaint, plaintiffs contended that the aforementioned statutory exemption is unconstitutional, as violative of equal protection guaranteed under the Federal and State Constitutions, as it is inapplicable to transportation authorities other than the Metropolitan Transportation Authority (MTA) and its affiliates, including the TA and its subsidiary, Manhattan and Bronx Surface Transit Operating Authority (MABSTOA). However, since the complaint did not assert such claim, and since the Attorney-General had not been given the required statutory notice (Executive Law § 71) of intent to challenge the constitutionality of a statute, the motion was adjourned to enable plaintiffs to move to amend their complaint accord *1022 ingly. The Attorney-General was notified of such application and, by letter dated April 12, 1990, declined to appear.
In their proposed amended complaint, plaintiffs seek the same relief as in the original pleading, but in addition make the aforementioned claim of unconstitutionality. Defendants oppose the amendment and seek dismissal of the action.
"[L]eave to amend pleadings is freely given absent prejudice or surprise resulting directly from the delay * * *. The legal sufficiency or merits thereof will not be examined unless the insufficiency or lack of merit is clear and free from doubt”. (Battery Bldg. Maintenance Co. v 888 Seventh Ave. Assocs., 157 AD2d 556, 557 [1st Dept]; see also, Daniels v Empire-Orr, Inc., 151 AD2d 370 [1st Dept 1989].)
Public Authorities Law § 1205 (6) provides, with respect to the TA, that: "No acts or activities taken or proposed to be taken by the authority pursuant to the provisions of subdivision one or two of this section shall be deemed to be 'actions’ for the purposes or within the meaning of article eight of the environmental conservation law.” One of the activities authorized in such subdivision (1) is the power to adjust fares to be charged for the use of any transit facility. Public Authorities Law § 1203-a (10) includes a similar provision applicable to MABSTOA, and Public Authorities Law § 1266 (3) contains a like provision applicable to the MTA.
All of said provisions were adopted as part of Laws of 1981 (ch 314) in which the Legislature declared a "transportation emergency” in the counties serviced by the MTA, the TA, and their subsidiaries. The adopted solution called for the sale of notes and bonds secured by revenues from fares, the Legislature finding that "[u]nless such funds are obtained and capital rehabilitation and improvement programs promptly implemented, the transit and transportation system servicing this district will deteriorate, and a clear and present danger would result to the health, safety and welfare of its inhabitants” (L 1981, ch 314, § 1).
"There is a simple, but well-founded, presumption that an act of the Legislature is constitutional and this presumption can be upset only by proof persuasive beyond a reasonable doubt * * *. There is also * * * a further presumption * * * that the Legislature has investigated and found facts necessary to support the legislation”. (Hotel Dorset Co. v Trust for Cultural Resources, 46 NY2d 358, 370 [1978].) In that case it was further stated that (at 369-370): "Courts are required to *1023 exercise a large measure of restraint when considering highly intricate and imaginative schemes for public financing * * * designed to be in the public interest. Some may be highly controversial. But when a court reviews such a decision, it must operate on the rule that it may not substitute its judgment for that of the body which made the decision.” (See also, Defiance Milk Prods. Co. v Du Mond, 309 NY 537 [1956].)
Regarding the claim of denial of equal protection, it is initially noted that the State provision "is no broader in coverage than the Federal provision”. (Under 21, Catholic Home Bur. for Dependent Children v City of New York, 65 NY2d 344, 360 [1985]; see also, Matter of Esler v Walters, 56 NY2d 306 [1982].)
Next must be determined the standard of review. Plaintiffs claim a "strict scrutiny” standard, whereas defendants urge a "rational basis” test. In Board of Educ. v Nyquist (57 NY2d 27 [1982]) the rational basis standard was employed in a case challenging the State formula for aid to education, the court stating (at 43-44): "The circumstance that public education is unquestionably high on the list of priorities of governmental concern and responsibility, involving the expenditures of enormous sums of State and local revenue, enlisting the most active attention of our citizenry and of our Legislature, and manifested by express articulation in our State Constitution, does not automatically entitle it to classification as a 'fundamental constitutional right’ triggering a higher standard of judicial review for purposes of equal protection analysis. * * * The more careful scrutiny standard has been applied when the challenged State action has resulted in intentional discrimination against a class of persons grouped together by reason of personal characteristics, the use of which called into question the propriety of the particular classifications”.
Also, as noted in the Nyquist case (supra), in Matter of Bernstein v Toia (43 NY2d 437 [1977]), which involved public assistance, the court applied the rational basis test to determine constitutionality.
Here, as observed by Justice Evans in his prior decision, plaintiffs’ claim is "not without logical basis * * * [as] an increase in the fare structure will have an effect on the number of automobiles used in New York * * * and will therefore have an effect upon the social and economic environment as well as upon the physical environment”. Published reports have indicated that in fact the average number of *1024 fares collected daily by the TA has declined since the fare increase became effective, but whether this is the result of more persons employing automobiles or increased "fare beating” is not clear, and, in any event, not relevant to the issue before the court.
In light of the decisions of the Court of Appeals employing a rational basis test in dealing with public education and public assistance, and the limitation stated in the Nyquist case (supra) on the use of strict scrutiny review, the court finds that the appropriate test, in ascertaining the constitutionality of the challenged exemptions, is whether there is a rational basis for same.
With respect to the resulting lack of uniformity throughout the State with regard to the obligation of public transportation agencies to file an EIS, it has been held that "[e]qual protection does not require territorial uniformity of law within a State”. (Matter of Rosenthal v Hartnett, 36 NY2d 269, 274 [1975].) In that case the court upheld a law providing administrative adjudication of certain traffic offenses in New York City, while retaining judicial adjudication elsewhere in the State, and also imposed a different quantum of proof to determine guilt here. The rational basis found for establishing the different procedures was the significantly greater incidence of crime in the city and the consequential need to free judicial personnel to handle the heavier criminal case load.
In Matter of Hogan v Rosenberg (24 NY2d 207 [1969], revd on other grounds sub nom. Baldwin v New York, 399 US 66) a statute setting a different rule with respect to the right to a trial by jury for cases heard in New York City from that applicable to cases tried elsewhere was upheld. The court noted that (at 216) the Supreme Court has held that "territorial discrimination * * * as between different parts of the same State is not of itself violative of the equal protection clause, even if the State has no reasonable basis for making such a distinction”. The court went on to state that even if territorial discrimination cannot be sustained unless based on a reasonable classification, "the overburdening caseload existing in the criminal courts of the highly populated City of New York has given rise to extraordinary and unique circumstances which manifests the reasonable basis for making such a distinction” (supra, at 218; see also, Salsburg v Maryland, 346 US 545 [1954]).
In determining whether a statute has a rational basis, the *1025 court in Maresca v Cuomo (64 NY2d 242 [1984], appeal dismissed 474 US 802) stated the test as follows (at 250-251):
"Pursuant to traditional rational basis analysis, a legislative enactment will pass constitutional muster if the governmental classification is based upon some conceivable and legitimate State interest * * *. If any conceivable state of facts will support the classification, said provisions will not be held violative of the equal protection clause * * *.
"The legitimate purpose justifying the provision need not be the primary purpose of the provisions * * * and indeed, a court may even hypothesize the motivations of the State Legislature to discern any conceivable legitimate objective promoted by the provision under attack”.
Clearly here there was a rational basis for exempting fare increases from the SEQRA requirement for a prior EIS. The Legislature declared an emergency that called for prompt financing to improve the transit facilities within the area serviced by the MTA, the TA and their subsidiaries. Since the court must assume that the Legislature was aware: that the EIS procedure can be subject to lengthy delays, including that related to litigation with respect thereto; that the contemplated financing would require that fare revenues serve as security for the borrowings; and that the authorities were required to have balanced budgets, the court finds that there was a rational basis for the legislation attacked herein.
Finally, plaintiffs argue that even if the challenged sections are upheld and defendants need not file an EIS with respect to the fare increase, the increase is subject to other provisions of the act, such as subdivision (1) of ECL 8-0109, which provides: "Agencies shall use all practicable means to realize the policies and goals set forth in this article, and shall act and choose alternatives which, consistent with social, economic and other essential considerations, to the maximum extent practicable, minimize or avoid adverse environmental effects, including effects revealed in the environmental impact statement process.” In support of this position plaintiffs note that another section of the law (Public Authorities Law § 1266 [11]) provides that the activity referred to therein is not "subject to the provisions of [ECL] article eight”, whereas the challenged sections, adopted as part of the same chapter 314, merely stated that fare adjustments are not "actions”. Plaintiffs maintain that, by voting to increase fares without considering alternative policies that would not cause riders to adopt other *1026 means of transportation, defendants violated this section and thus the implementation of the decisions to increase fares was unlawful.
The court disagrees and finds that by specifying that fare adjustments are not "actions”, the Legislature intended that the entire SEQRA be inapplicable to such activity, in the same way that the "actions” specifically mentioned to in subdivision (5) of ECL 8-0105 are entirely exempt. (See, Matter of New York Pub. Interest Research Group v Town of Islip, 71 NY2d 292 [1988]; Matter of Silver v Koch, 137 AD2d 467 [1st Dept 1988]; Weinberg, 1988 Supp Practice Commentaries, McKinney’s Cons Laws of NY, Book 17 ½, ECL 8-0105, 1990 Pocket Part, at 13.)
The complaint, insofar as it seeks relief for the plaintiffs who are unincorporated associations, is dismissed as said associations cannot prosecute an action without counsel. (CPLR 321 [a].)
The court wishes to commend the pro se plaintiffs, who are not attorneys, for a thoughtful presentation of a sincere challenge to governmental action which they deemed unlawful, and which they made solely to benefit the general public.
In conclusion, plaintiffs’ motion to amend their pleading is denied, and the application by defendants to dismiss the complaint, insofar as it seeks other than declaratory relief, is granted, and the court declares that Public Authorities Law § 1205 (6) (which is the only section specifically challenged in the complaint) as well as the similar sections applicable to MABSTOA and the MTA, are not violative of either the United States or New York State Constitution, and that the decisions to raise the fares on the facilities of the defendants were not unlawful.